IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHEN P. KOONS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 11-2956 |
| | : | |
| XL INSURANCE AMERICA, INC., and | : | |
| GREENWICH INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

YOHN, J.                                                                        May 29, 2012

      This is an insurance-coverage dispute regarding the duty of defendants, XL Insurance

America, Inc. ("XL") and Greenwich Insurance Company ("Greenwich") to defend and

indemnify plaintiff, Stephen P. Koons, in a personal-injury action brought against him in state

court. After XL and Greenwich denied coverage to Koons, he brought this action seeking a

declaratory judgment that XL and Greenwich have a duty to defend and indemnify him in the

personal-injury action, and asserting claims for breach of contract and bad faith stemming from

defendants' refusal to provide coverage. Now pending are cross-motions filed by Koons and

defendants for summary judgment under Federal Rule of Civil Procedure 56. For the reasons that

follow, I will deny Koons's motion for summary judgment and I will grant defendants' motion.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

On April 18, 2008, Jeremy J. Andre, an employee of Ches-Mont Disposal, LLC ("Ches-Mont LLC") a waste-collection, recycling, and waste-disposal company, was killed while dumping recycling materials at a recycling facility in Philadelphia, Pennsylvania, in the course of his employment. (Defs.' Mot. for Summ. J. ("Defs.' Mot.") ¶¶ 7–8.) He was allegedly crushed by a trash-disposal truck that he had been operating on behalf of Ches-Mont LLC. (*Id.* ¶ 9.)

According to the Pennsylvania Department of Transportation's records, Koons, the plaintiff in this action, was the record owner of the truck at the time of the accident. (*Id.* ¶¶ 36, 52.) Koons, individually, and as a sole proprietor doing business under the fictitious name of Miller Concrete, was engaged in the business of selling and installing underground storage tanks, and had purchased the truck on October 22, 2001. (*Id.* ¶¶ 29, 31; Answer of Pl. to Defs.' Mot. for Summ. J. ("Pl.'s Answer to Defs.' Mot.") ¶ 29.) The purchase invoice identified the final user of the truck as "Chesmont Disposal" (Defs.' Mot. Ex. F), and on November 12, 2001, Koons entered into a 36-month lease on the truck with No Fun Allowed, Inc., a trash-hauling company solely owned by Koons at that time and a predecessor of what ultimately became Ches-Mont LLC.[2] (Defs.' Mot. ¶¶ 30, 32.)

In 2004 or 2005, No Fun Allowed, Inc., became Ches-Mont Disposal, Inc., an S-corporation wholly owned by Koons. (*Id.* ¶ 34.) Then in 2006, Koons acquired two partners in the business and Ches-Mont Disposal, Inc., was legally changed to a Pennsylvania limited

---

[1] Except as otherwise noted, the following facts are undisputed.

[2] The lease referred to "No Fun Allowed d/b/a Ches-Mont Disposal" as the lessee. (Defs.' Mot. Ex. G). But the lease was signed by James M. Mulroy, Jr., as the president of No Fun Allowed, Inc. (*Id.*) This ambiguity, however, is not material in this litigation.

liability company, Ches-Mont Disposal, LLC ("Ches-Mont LLC"). (*Id.* ¶ 39). Koons was the president of Ches-Mont LLC and a 35% owner and managing member of Ches-Mont Holdings, LLC ("Ches-Mont Holdings"), which was the sole member of Ches-Mont LLC, and Koons thus effectively owned 35% of Ches-Mont LLC. (*Id.* ¶¶ 40–41.)

According to its terms, the original lease on the trash-disposal truck expired on November 12, 2004. (*Id.* ¶ 35.) Although there is no evidence that the lease was extended, Ches-Mont LLC and its predecessors continued to use the truck after that date.[3] (*Id.* ¶¶ 37–38). Koons asserts that the lease "was never carried out by either party" because he transferred ownership of the truck to Ches-Mont LLC's predecessor after he purchased the truck, but he points to no evidence of such a transfer before the April 18, 2008 accident. (Pl.'s Answer to Defs.' Mot. ¶ 35.) And indeed, as of October 6, 2009, the Pennsylvania Department of Transportation continued to list Koons, doing business as Miller Concrete, as the owner of the truck and No Fun Allowed, doing business as Chesmont Disposal, as the lessee.[4] (Defs.' Mot. Ex. L.)

On February 25, 2010, Andre's widow commenced an action in state court against Koons, individually doing business as Miller Concrete, asserting claims for negligence, wrongful death, and survival (I will refer to this lawsuit as the "Andre action"). (Defs.' Mot. ¶ 10; *id.* Ex. B ("Andre Compl.").) The complaint alleged, *inter alia*, that Koons, as the owner-lessor of the truck, had failed to properly maintain the truck and had failed to discover and repair an alleged

---

[3] The lease itself contains no provision for renewal after its expiration on November 12, 2004. In fact, the lease refers to itself as a capital lease and provides that at the end of the lease term, the lessee shall pay a specified sum to the lessor and title to the equipment shall be signed over by the lessor to the lessee. (Defs.' Mot. Ex. G.) There is no evidence of such a transfer of title upon the expiration of the lease, however.

[4] On July 27, 2010, Koons transferred title of the truck to Ches-Mont LLC. (Defs.' Mot. ¶ 53; Pl.'s Answer to Defs.' Mot. ¶ 53.)

3

defect.[5] (Andre Compl. ¶¶ 126–155.) Ches-Mont LLC was not named as a defendant in the Andre action.[6]

At the time of Andre's accident, Ches-Mont LLC was the named insured under both a commercial auto policy issued by XL and a commercial excess and umbrella policy issued by Greenwich. (Defs.' Mot. ¶¶ 54, 62.) Seeking defense and indemnification in the Andre action under these policies, Koons notified XL of the lawsuit by letter dated April 30, 2010. (*See* Mot. of Pl. for Partial Summ. J. ("Pl.'s Mot.") Ex. B.) Although XL initially agreed to provide a defense for Koons under a reservation of rights (*see id.* Ex. C), after further review (and after the exchange of a series of letters between Koons's counsel and XL), XL ultimately determined that it had no duty to defend or indemnify Koons in the Andre action (*see id.* Exs. D–F). Greenwich similarly determined that Koons was not entitled to coverage.[7] (*See id.* Ex. H.)

---

[5] The Andre complaint made no claim as to any vicarious liability of Koons for actions by Ches-Mont LLC.

[6] The allegations in the Andre complaint were obviously carefully drafted to avoid any reference to Ches-Mont LLC because Ches-Mont LLC, as Andre's employer, has been made statutorily immune from suit under the workers' compensation law. *See* 77 Pa. Stat. Ann. § 481.

In his brief, Koons contends that paragraphs 16, 17, and 152 of the Andre complaint allege that "Koons holds vicarious liability for 'acts or failures to act, carelessness, negligence and/or reckless conduct of various workmen, agents, servants, independent contractors, subcontractors or employees,' which allegation would encompass solely and exclusively those persons who work for Ches-Mont [LLC] and were responsible for maintaining the vehicle which was driven by Andre." (Mem. of Law of Pl. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n Br.") at 14.) But Koons misquotes and mischaracterizes the allegations in the Andre complaint. The paragraphs cited by Koons refer to the "workmen, agents, ostensible agents, servants, independent contractors, subcontractors and/or employees" of the "*named [d]efendants*" in the Andre action. (Andre Compl. ¶ 16 (emphasis added); *see also id.* ¶¶ 17, 152.) Ches-Mont LLC was not a named defendant in that action.

[7] At the time of the accident, Koons was the named insured under a commercial auto policy issued by Erie Insurance Exchange ("Erie") with liability limits of $1,000,000. (Defs.' Mot. ¶ 70.) Erie has afforded defense and immunity coverage to Koons in the Andre action. (*Id.* ¶ 71.)

Koons filed this action on May 4, 2011, seeking a declaratory judgment that XL and Greenwich have a duty to defend and indemnify him in the Andre action, and asserting claims for breach of contract and bad faith stemming from defendants' refusal to provide coverage. I stayed Koons's bad-faith claim pending resolution of the insurance-coverage dispute.

In their answer to Koons's complaint, defendants each asserted a counterclaim seeking a declaration that Koons was not entitled to a defense or indemnification in the Andre action.

After discovery as to the insurance-coverage issue, XL and Greenwich filed a motion for summary judgment as to Koons's declaratory-judgment and breach-of-contract claims against them (counts I and II of Koons's complaint) and as to their counterclaims for declaratory judgments. Koons filed a cross-motion for partial summary judgment as to his declaratory-judgment claim against XL.

## II.    STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). To defeat a motion for summary judgment, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and may not "rely merely

5

upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). By the same token, "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). In addition, the mere fact that parties have filed cross-motions for summary judgment "does not mean that the case will necessarily be resolved at the summary judgment stage," because "[e]ach party must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Atl. Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 626 (E.D. Pa. 1997). When evaluating a motion for summary judgment, the court "is not to weigh the evidence or make credibility determinations." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

At issue here is whether, under the insurance policies issued to Ches-Mont LLC, XL and Greenwich have a duty to defend and indemnify Koons in the underlying Andre action.

Under Pennsylvania law, which the parties agree applies here, "[t]he interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). The goal of such interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). If the language of the insurance policy "is clear and unambiguous, a court is required to give effect to

that language." *Id.* But if "a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.*

The insured "bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). If the insured meets that burden, "the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).

I turn first to the question whether XL has a duty to defend or indemnify Koons under the policy it issued to Ches-Mont LLC.

### A.     The XL Policy

XL argues that it has no duty to defend or indemnify Koons in the Andre action, asserting first that Koons is not an "insured" under its policy and second that even if Koons is an "insured," the "employee indemnification and employer's liability" exclusion (I will refer to it as the "employee exclusion") bars coverage. I agree with XL that the employee exclusion bars coverage here, and thus I do not address the threshold question of whether Koons is an insured under the XL policy but assume, for purposes of the motions for summary judgment, that Koons is an insured.

Under the terms of the employee exclusion, XL has no duty to defend or indemnify an insured with respect to a claim for bodily injury to "[a]n 'employee' of the 'insured' arising out of and in the course of . . . [e]mployment by the 'insured.'" [8] (Defs.' Mot. Ex. N ("XL Policy")

---

[8] The employee exclusion provides in relevant part:

§ II.B.4, at 3.) The exclusion applies regardless of "[w]hether the 'insured' may be liable as an employer or in any other capacity." (*Id.* § II.B.4, at 3–4.)

There is no dispute that Andre was an employee of Ches-Mont LLC, the named insured under the XL policy, and that he was acting within the scope of his employment at the time of the accident. XL thus argues that the employee exclusion bars coverage here.

Koons, on the other hand, argues that the term "insured" in the employee exclusion refers only to the insured seeking coverage, here, Koons. Because Andre was not *his* employee, Koons argues, the employee exclusion does not apply. Koons relies on the policy's "severability of insureds" clause, which states that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought." (*Id.* § V.G, at 10.)

---

This insurance does not apply to any of the following:

* * *

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

a.  An "employee" of the "insured" arising out of and in the course of:

    (1) Employment by the "insured"; or

    (2) Performing the duties related to the conduct of the "insured's" business; or

b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

    (1) Whether the "insured" may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(XL Policy § II.B.4, at 3–4.)

But the Pennsylvania Supreme Court squarely rejected this argument in *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.* ("*PMA*"), 233 A.2d 548 (Pa. 1967), holding that, notwithstanding a severability clause, the employee exclusion applied to *any* claim for bodily injury to an employee of the named insured, regardless of whether such a claim was asserted against the named insured or another insured, because the term "insured" was clearly defined in the policy to include the named insured.

In that case, an employee of the named insured under a policy issued by PMA was injured while making a delivery to another company, Delaware, which was insured by Aetna but was also an insured (but not the named insured) under the PMA policy. *PMA*, 233 A.2d at 549. The employee sued both his employer and Delaware. *Id.* The question for the court was whether the employee exclusion in the PMA policy excluded coverage for the claims against Delaware, even though the plaintiff in the underlying action was not an employee of Delaware. *Id.* at 550. The employee exclusion provided that the policy did not apply "to bodily injury . . . of any employee of the insured." *Id.* (emphasis omitted). And the term "insured" was defined in the policy as follows: "With respect to the insurance for bodily injury liability . . . the unqualified word 'insured' includes the named insured." *Id.* The policy also included a "severability of interests" clause, which stated that "the term 'the insured' is used severally and not collectively." *Id.*

The Pennsylvania Supreme Court rejected Aetna's argument that the severability clause required that the term "insured" in the employee exclusion be "confined to mean the particular insured claiming coverage," namely, Delaware. *Id.* at 550. Given the "unambiguous language of the [insurance] contract" defining the term "insured" to include the named insured, the court concluded that the severability clause did not modify the meaning of the term "insured" in the employee exclusion. *Id.* at 551 ("When the language is 'the unqualified word "insured" includes

9

the named insured,' there is no room to seek the interpretation of [Aetna].") The court thus held

that the employee exclusion applied to bar coverage of the claims against Delaware. *Id.* at

550–52. Although the court noted that "other jurisdictions [were] divided on the question," the

court stated that "Pennsylvania law [was] clear," and found no reason to deviate from the court's

precedents. *Id.* at 551.

      Here, as in *PMA*, the term "insured" is unambiguously defined to include the named

insured. The XL policy states that "'[i]nsured' means any person or organization qualifying as an

insured in the Who Is An Insured provision of the applicable coverage." (XL Policy § V.G, at

10.) And the "Who Is An Insured" provision, in turn, states that the named insured is an insured.[9]

(*Id.* § II.A.1, at 2.) Thus, I am bound by *PMA* to conclude that the employee exclusion in the XL

policy operates to exclude coverage for bodily injury to an employee of the named insured even

when another insured, such as Koons, is seeking coverage. *See Brewer v. U.S. Fire Ins. Co.*, 446

F. App'x 506, 509–10 (3d Cir. 2011) (not precedential) (considering employee exclusion and

severability clause identical to the clauses at issue here and concluding that the district court

"appropriately relied upon *PMA*" in holding that the employee exclusion clause applied even

---

      [9] The "Who Is An Insured" provision states:

The following are "insureds":

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or
   borrow . . .

     * * *

c. Anyone liable for the conduct of an "insured" described above but only to the
   extent of that liability.

(XL Policy § II.A.1, at 2–3.) The preamble to the policy explains that "[t]hroughout this policy,
the words 'you' and 'your' refer to the Named Insured shown in the Declarations." (XL Policy
at 1.)

though the injured employee was an employee of the named insured, not of the insured seeking coverage); *Scottsdale Ins. Co. v. City of Easton*, 379 F. App'x 139, 150 (3d Cir. 2010) (not precedential) (similarly concluding that court was bound by *PMA*); *Brown & Root Braun, Inc. v. Bogan, Inc.*, 54 F. App'x 542, 547–48 & n.2 (3d Cir. 2002) (not precedential) (concluding that *PMA* resolved the issue presented and finding "no need to certify [the question] to the Pennsylvania Supreme Court").[10] Because there is no dispute that Andre was an employee of Ches-Mont LLC, the named insured, and that he was acting within the scope of his employment at the time of the accident, I must conclude that the employee exclusion bars coverage for Koons.[11]

Koons misplaces his reliance on *Luko v. Lloyd's London*, 573 A.2d 1139, 1144 (Pa. Super. Ct. 1990), in which the court concluded that the insurance policy at issue provided coverage for injuries to an employee of the named insured. Although the policy in *Luko* contained an employee exclusion similar to the one at issue here, that policy also contained a "special endorsement" that stated that "the 'persons insured' provision is amended to include any employee of the named insured while acting within the scope of his duties as such." *Luko*, 573 A.2d at 1144. And the court concluded that the endorsement "clearly and u[n]ambiguously

---

[10] Although these Third Circuit decisions are not precedential, I view them as persuasive authority, particularly given the factual similarity of those cases to this case.

[11] To the extent that Koons suggests that the severability clause in the XL policy differs from that in *PMA* and that *PMA* thus does not control here, I disagree. Although the language of the two clauses does differ, the variation in the clauses is "a distinction without a legally significant difference." *PMA*, 233 A.2d at 552 (quoting *Patton v. Patton*, 198 A.2d 578, 581 (Pa. 1964)); *see also Brewer*, 446 F. App'x at 509–10 (considering employee exclusion and severability clause identical to the clauses at issue here and concluding that the district court "appropriately relied upon PMA"); *Scottsdale Ins.*, 379 F. App'x at 150 (finding no material difference between severability clause substantially similar to the clause at issue here and clause at issue in *PMA*, and concluding that court was bound by *PMA*); *Brown & Root Braun*, 54 F. App'x at 547–48 (same).

modifie[d] the standard employee exclusion." *Id.* Because there is no such endorsement here, *Luko* does not apply. The *Luko* court did assert that the policy would provide coverage for the employee's injuries even if the endorsement did not exist. *Id.* But the court did not adequately distinguish *PMA*, stating only that "[i]n that case [*PMA*], the court . . . concluded that the clear and unambiguous policy language excluded employees of the insured" and that "[t]his holding has no application to a case where, as here, the clear language of the policy does provide coverage for employees." *Id.* To the extent that the Luko court took a different view of the proper interpretation of the severability clause and the term "insured" in the employee exclusion than that articulated by the Supreme Court in *PMA*, I may not rely on the *Luko* court's decision, because I must "apply state law as interpreted by the state's highest court," *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994), and must therefore follow *PMA*.[12]

Because the employee exclusion bars coverage for Koons with respect to the Andre action, I will grant XL's motion for summary judgment as to Koons's declaratory-judgment and breach-of-contract claims against XL (counts I and II of Koons's complaint) and as to XL's declaratory-judgment counterclaim, and I will deny Koons's motion for summary judgment as to his declaratory-judgment claim against XL.

---

[12] *Atlantic States Insurance Co. v. Northeast Networking Systems, Inc.*, 893 A.2d 741 (Pa. Super. Ct. 2006), another case on which Koons relies, is similarly unavailing here. In concluding that the policy's employee exclusion would bar coverage only if the injured party was an employee of the named insured, the court did not even acknowledge the Pennsylvania Supreme Court's contrary holding in *PMA*. *See Atlantic States*, 893 A.2d at 747.

### B.       The Greenwich Policy

I turn now to the question whether Greenwich has a duty to defend or indemnify Koons

under the commercial excess and umbrella policy it issued to Ches-Mont LLC.

The Greenwich policy provides two types of coverage, Coverage A and Coverage B. In

seeking summary judgment, Greenwich argues that it has no duty to defend or indemnify Koons

under either coverage. I agree.

Coverage A provides excess "follow form" liability coverage. (*See* Defs.' Mot. Ex. O

("Greenwich Policy") Coverage A, at 1.) Under its terms, it "follow[s] the terms, definitions,

conditions and exclusions" of the XL policy (*id.*), and provides coverage only when a claim is

covered by the XL policy and only to the extent that any applicable limits of the XL policy have

been exhausted (*id.* at 1–2). Because I have already concluded that Koons is not entitled to

coverage under the XL policy, I must similarly conclude that he is not entitled to coverage under

Coverage A of the Greenwich policy.

Coverage B provides umbrella coverage, requiring Greenwich to "pay on behalf of the

Insured those sums . . . that the Insured becomes legally obligated to pay as damages by reason of

liability imposed by law . . . because of Bodily Injury, Property Damage, Personal Injury or

Advertising Injury not covered by [the XL policy]." (*Id.* Coverage B, at 2.) The term "insured,"

in turn, is defined to include the named insured (Ches-Mont LLC), as well as the named

insured's "partners, joint venture members, executive officers, employees, directors, stockholders

or volunteers while acting within the scope of their duties as such." (*Id.* at 17.)

Defendants argue that Koons is not an "insured" under Coverage B and thus that he is not

entitled to coverage. While defendants acknowledge that Koons is an executive officer and an

owner of Ches-Mont LLC, they contend that Koons is not an insured with respect to the Andre

13

action because he is being sued in his capacity as the owner of the trash-disposal truck, not in his capacity as an officer or owner of Ches-Mont LLC. I agree.

Coverage B does not unqualifiedly cover an owner or officer of Ches-Mont LLC; rather, it covers such an individual only in his capacity as an owner or officer of the company. And, as defendants note, Koons is being sued in the Andre action as the owner and lessor of the trash-disposal truck—not as an owner or executive officer of Ches-Mont LLC—for actions that he took (or failed to take) as an owner and lessor of the truck.

Koons contends, however, that his purchase and ownership of the truck was undertaken in his capacity as the founder and sole owner of the predecessor of Ches-Mont LLC. (*See* Pl.'s Mot. ¶ 53.) But even should such a fact, if proved true, be sufficient to establish that Koons is an insured under the Greenwich policy, Koons points to no evidence in the record from which a jury could reasonably find that he purchased and leased the truck in his capacity as the founder and sole owner of the predecessor of Ches-Mont LLC. Indeed, the evidence of record shows only that Koons, individually doing business under the fictitious name of Miller Concrete—a separate business from Ches-Mont LLC (and its predecessors)—purchased the truck and entered into a 36-month lease with the predecessor of Ches-Mont LLC.[13] And his conclusory assertions that he purchased the truck in his capacity as the founder and sole owner of the predecessor of Ches-Mont LLC are not sufficient to establish a genuine issue of fact as to whether he was acting

---

[13] In his responses to the plaintiff's interrogatories in the Andre action, Koons disclaimed ownership of the truck at the time of the accident (*see* Defs.' Mot. Ex. D, at 5 (response to question 6)), asserting that at the end of the 36-month lease period, the truck "was to be owned, operated and maintained by . . . Ches-Mont Disposal" (*id.* at 4 (response to question 4)). In his answers to defendants' interrogatories in this action, Koons similarly denied that he owned the truck at the time of the accident, asserting that "[o]wnership of the vehicle was transferred to Ches-Mont Disposal's predecessor as part of [his] capital contribution to that company." (Defs.' Mot. Ex. A, at 2 (answer to question 9).) Koons offers no evidence to support these conclusions.

within the scope of his duties as an owner or officer of Ches-Mont LLC when he purchased and leased the truck.[14]

Moreover, contrary to Koons's contentions, the allegations in the Andre complaint do not "tie . . . [his] alleged acts of negligence to his role as an officer, director and owner of [Ches-Mont LLC]." (Pl.'s Opp'n Br. at 20–21.) Koons points out that the complaint alleges that the purchase invoice for the truck listed "Ches-Mont Disposal . . . as the 'final user' of the truck" (Andre Compl. ¶ 21), that "Defendant Koons and lessee, No Fun Allowed, d/b/a Ches-Mont Disposal, shared the same address" (*id.* ¶ 27), and that "Defendant Koons was a co-owner of Ches-Mont Disposal and the owner and lessor of the truck operated by Jeremy Andre for Ches-Mont Disposal, the truck's lessee" (*id.* ¶ 35). But these allegations do not suggest that Koons is being sued in his capacity as an owner or officer of Ches-Mont LLC. Rather, it is clear from the Andre complaint that he is being sued in his capacity as the owner and lessor of the truck.[15, 16]

_____

[14] Koons explains, in his motion for partial summary judgment, that he is not seeking summary judgment as to his declaratory-judgment claim against Greenwich because there are questions of fact as to whether he was "acting within the scope of his role" as an owner and officer of Ches-Mont LLC (Mem. of Law in Supp. of Mot. of Pl. for Partial Summ. J. at 4), and he asserts that he will present evidence in support of his entitlement to coverage at trial (*id.* at 13). But Koons bears the burden of proving that he is an insured under the Greenwich policy, *see Estate of Mehlman*, 589 F.3d at 111, and to defeat defendants' motion for summary judgment he must present evidence showing that there is a genuine issue of fact as to whether he was acting in his capacity as an owner or officer of Ches-Mont LLC—he cannot rely on "bare assertions," *Fireman's Ins. Co.*, 676 F.2d at 969.

[15] Koons contends that paragraphs 127–129 of the complaint allege that Koons, "as a co-owner of Ches-Mont [LLC], . . . had a duty to inspect the vehicle, that he knew or should have known of the need for a neutral safety switch and had adequate opportunities to determine whether it was operational." (Pl.'s Opp'n Br. at 21.) But Koons's characterization of these allegations is misleading. Paragraph 127 of the complaint does indeed suggest that as "co-owner of Ches-Mont [LLC]," as well as the owner and lessor of the truck, "Koons had access to the truck and multiple opportunities for inspection, maintenance and/or repair." (Andre Compl. ¶ 127.) But paragraphs 128 and 129 of the complaint clearly allege that it was in Koons's capacity as the *owner and lessor of the truck* that he had a duty to inspect the truck and that he knew or should have known of the need for a neutral safety system. (*See id.* ¶ 128 ("As the

Accordingly, I conclude that Koons is not an insured with respect to the Andre action and thus that he is not entitled to coverage under Coverage B.

Because neither Coverage A nor Coverage B entitles Koons to coverage with respect to the Andre action, I will grant Greenwich's motion for summary judgment as to Koons's declaratory-judgment and breach-of-contract claims against Greenwich (counts I and II of Koons's complaint) and as to Greenwich's declaratory-judgment counterclaim.

---

truck's owner and/or lessor, Defendant Koons, d/b/a Miller Concrete, knew, or should have known, that this truck was required to have an operable neutral safety system . . . ."); *id.* ¶ 129 ("Defendant Koons, d/b/a Miller Concrete, was the owner, lessor and provider of the truck which Andre drove and, as such, he retained the duty to inspect the truck and discover any defects in the truck . . . .").)

[16] Asserting that defendants have "attempted to 'read into' the [Greenwich] policy" a condition that does not exist, Koons argues that the Greenwich policy contains no requirement that he be sued in his capacity as an officer or member of Ches-Mont LLC in order to be entitled to coverage. (Pl.'s Mot. ¶ 54.) Rather, he contends, he must only have been acting in his capacity as an officer or owner of Ches-Mont LLC in order to qualify as an insured. Koons further argues that by asserting that he is an insured only to the extent that he is sued in his capacity as an officer or owner of Ches-Mont LLC, Greenwich is effectively claiming that it would not afford coverage unless he was immune from liability under the exclusivity provision of the workers' compensation law. In order to give Coverage B any meaning, he argues, he must be afforded coverage for his potential liability arising out of his activities as an officer or owner of Ches-Mont LLC.

I find no merit in Koons's argument. First, while I do not discount the possibility that the distinction that Koons attempts to draw could have significance in some circumstances, I find no practical significance here, because the negligence claims against Koons are based on actions that he allegedly took (or failed to take) in his capacity as the owner and lessor of the truck and there is nothing to suggest that his allegedly negligent conduct was within the scope of his duties as an owner or officer of Ches-Mont LLC. Second, contrary to Koons's contention, reading the definition of the term "insured" as requiring that an individual be sued in his capacity as an owner or officer of the named insured does not render Coverage B meaningless. While Koons is likely correct that the exclusivity provision of the workers' compensation law would render him immune from suit if the Andre Estate sued him in his capacity as an owner or officer of Ches-Mont LLC (Andre's employer), *see* 77 Pa. Stat. Ann. § 481, Koons overlooks the fact that he would potentially be subject to liability if he were sued in such a capacity by an injured party who was not an employee of Ches-Mont LLC—and he would arguably be an "insured" under Coverage B in such a case.

16

**III.     CONCLUSION**

For the reasons set forth above, I conclude that neither XL nor Greenwich has a duty to defend or indemnify Koons in the Andre action. I will therefore grant defendants' motion for summary judgment as to Koons's declaratory-judgment and breach-of-contract claims (counts I and II of Koons's complaint) and as to their declaratory-judgment counterclaims, and I will deny Koons's motion for partial summary judgment as to his declaratory-judgment claim against XL.

An appropriate order accompanies this memorandum.