IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| STEPHEN P. KOONS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-cv-2956 |
| XL INSURANCE AMERICA, INC. *et al.* | : | |

MEMORANDUM

YOHN, J.  September 19, 2013

This action arises out of the tragic death of Jeremy P. Andre, an employee of Ches-Mont Disposal, LLC,[1] while operating a garbage disposal truck. Following his death, Andre's estate brought an action (the "Andre Estate Action") in state court against Stephen P. Koons, for negligence, wrongful death, and survival. Koons, in turn, filed this suit against Greenwich Insurance Company ("Greenwich"), seeking a declaratory judgment as to Greenwich's duty to defend and indemnify Koons in the Andre Estate Action, as well as claims for beach of contract and bad faith. Before me are cross motions for summary judgment by Koons and Greenwich. For the following reasons, the plaintiff's motion for summary judgment will be denied, while the defendant's motion for summary judgment will be granted.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

   A.  **Factual Background**[2]

   In 1999, Koons purchased Miller Concrete, a company that sold septic tanks, and

---

[1]Throughout the record, the company is also referred to as "Chesmont Disposal." While I acknowledge this alternate spelling, I will refer to the company in its hyphenated form.

[2]The following facts are undisputed unless otherwise noted.

operated it as a sole proprietorship, continuing to use the fictitious name, Miller Concrete. (Pl.'s Mot. Summ. J. ¶ 32(a); Def.'s Resp. to Pl.'s Mot. Summ. J. ("Def.'s Resp.") ¶ 32(a).) Shortly thereafter, Koons purchased a garbage hauling company called Kronmueller Disposal, Inc. ("KDI"). (Pl.'s Mot. Summ. J. ¶ 32(c); Def.'s Resp. ¶ 32(c).) By 2001, Koons had changed the name of his garbage hauling company from KDI to No Fun Allowed, Inc. ("NFA"); for professional reasons, however, NFA operated under the fictitious name "Ches-Mont Disposal." (Pl.'s Mot. Summ. J. ¶ 32(d)-(e); Def.'s Resp. ¶ 32(d)-(e).)

On October 22, 2001, Koons, d/b/a Miller Concrete, purchased a Mack garbage disposal truck ("the Truck")—the Truck involved in Andre's death—from McNeilus Truck & Manufacturing Co. (Pl.'s Ans. to Second Mot. of Def. for Summ. J. ("Pl.'s Resp.") ¶ 34; Def.'s Mot. Summ. J. ¶ 34.) The invoice for the Truck states that it was sold to "Koons d/b/a Miller Concrete," and lists "Chesmont Disposal" as the final user. (Pl.'s Resp. ¶ 34; Def.'s Mot. Summ. J. ¶ 34.) On November 12, 2001, Koons entered into an equipment lease for the Truck with NFA. (Pl.'s Resp. ¶ 35; Def.'s Mot. Summ. J. ¶ 35.) The lease agreement lists Koons as the lessor and "NFA d/b/a Ches-Mont Disposal" as the lessee. (Pl.'s Resp. ¶ 35; Def.'s Mot. Summ. J. ¶ 35.) The lease agreement further states that NFA, d/b/a Ches-Mont Disposal, agreed to lease the Truck from Koons for a period of thirty-six months, at a rate of $2,657.41 per month. (Pl.'s Resp. ¶ 35; Def.'s Mot. Summ. J., Ex. 10.) At the end of the lease period, NFA, d/b/a Ches-Mont Disposal, was to pay Koons a sum of $58,842.37, at which time the title to the Truck would be signed over by the lessor to the lessee. (Pl.'s Resp. ¶ 35; Def.'s Mot. Summ. J., Ex. 10.) Nevertheless, in November 2004, although the lease had terminated, Ches-Mont Disposal continued to make sole use of the Truck, and Koons continued to be listed as the Truck's

registered owner with the Commonwealth of Pennsylvania. (Pl.'s Resp. ¶¶ 36-37; Def.'s Mot. Summ. J. ¶¶ 36-37.) Additionally, throughout the lease period NFA did not make any payments to Koons for use of the Truck. (Pl.'s Mot. Summ. J. ¶ 24(g); Def.'s Resp. ¶ 24.)

Sometime in 2004 or 2005, NFA officially changed its name to Ches-Mont Disposal, Inc., wherein Koons remained the sole owner and president. (Pl.'s Resp. ¶ 27; Def.'s Mot. Summ. J. ¶ 27.) Shortly thereafter, Ches-Mont Disposal, Inc. underwent a corporate restructuring, going from an S-corporation to a limited liability company called Ches-Mont Disposal, LLC. (Pl.'s Resp. ¶¶ 27-28; Def.'s Mot. Summ. J. ¶¶ 27-28.) Then, in 2006, Koons, along with partners Patrick Kelly and Richard Godschall, established Ches-Mont Holdings, LLC ("Ches-Mont Holdings"), a holding company that became the sole member of Ches-Mont Disposal, LLC. (Pl.'s Resp. ¶ 29; Def.'s Mot. Summ. J. ¶ 29.) Koons remained the president of Ches-Mont Disposal, LLC, and retained a 35% ownership in Ches-Mont Holdings. (Pl.'s Resp. ¶¶ 30,31,33; Def.'s Mot. Summ. J. ¶¶ 30, 31, 33.) Following the corporate restructuring, Ches-Mont Disposal, LLC continued to make sole use of the Truck, while Koons, d/b/a/ Miller Concrete, continued to be listed as the Truck's owner. (Pl.'s Mot. Summ. J. ¶ 24(l); Def.'s Resp. ¶ 24.)

On April 18, 2008, Jeremy Andre—while employed by Ches-Mont Disposal, LLC—died in an accident that involved the Truck. (Pl.'s Resp. ¶ 8; Def.'s Mot. Summ. J. ¶ 8.) As of the date of the incident, Ches-Mont Disposal, LLC continued to have exclusive use of the truck. ((Pl.'s Mot. Summ. J. ¶ 24(l); Pl.'s Resp. ¶ 9); (Def.'s Mot. Summ. J. ¶ 9; Def.'s Resp ¶ 24).) Additionally, as of October 6, 2009, Koons, d/b/a Miller Concrete, was still listed as the owner of the truck with the Pennsylvania Department of Transportation, and NFA, d/b/a Chesmont

Disposal, was still listed as the lessee.³ (Def.'s Resp. ¶¶ 32(p), 84.) On July 28, 2010, Koons sold the Truck to "Chesmont Disposal, LLC" for $5,000.⁴ (Def.'s Resp. ¶¶ 32(p), 85.)

B.      **Procedural History**

Following Andre's death, his estate filed suit against Koons, along with several other defendants not relevant to these proceedings, in state court. The estate sued Koons for negligence, wrongful death, and survival in his role as owner and lessor of the Truck (Stephen P. Koons d/b/a Miller Concrete). This suit is based on the claim that Koons, as lessor of the Truck, breached his duty of care to third-persons, such as Andre, by failing to maintain the truck in a safe and operable condition. (Def.'s Mot. Summ. J., Ex. 5, ¶¶ 127-152.) He was not sued for his role as president or director of Ches-Mont Disposal, LLC or for his relationship to Ches-Mont Holdings. Similarly, Andre's estate did not sue Ches-Mont Disposal, LLC or Ches-Mont Holdings.

After learning of the Andre Estate Action, Koons contacted XL Insurance America, Inc. ("XL Insurance") and Greenwich, with whom Ches-Mont Disposal, LLC held insurance policies, seeking defense and indemnification. Both insurance companies refused to defend or indemnify

---

        ³This assertion appears in Greenwich's "Statement of Additional Undisputed Facts" and in its "Counterstament [sic] of Undisputed Material Facts" in its response to Koons's motion for summary judgment. (Def. Greenwich Ins. Co.'s Resp. to Pl.'s Mot. Summ. J. on Pl.'s Compl. For Decl. J. ("Def.'s Resp.") ¶¶ 32(p), 84.) While this statement is supported by evidence in the record, (Defs.' Mot. Summ. J., ECF No. 23, Ex. L), Koons does not respond to the statement in his reply brief.

        ⁴Similarly, this assertion also appears in Greenwich's response to Koons's motion for summary judgment. (Def.'s Resp. ¶¶ 32(p), 85.) It is also supported by evidence in the record. (Defs.' Mot. Summ. J., ECF No. 23, Ex. M.) Although Koons does not respond to this alleged undisputed fact in his reply, he did state in a deposition that the sale was meant to place the title of the truck into Ches-Mont Disposal, LLC's name. (*Id.*, Ex. B, 50:5-24.)

Koons in the state court proceedings. Hence, Koons filed suit in federal court seeking a declaratory judgment as to the duties of XL Insurance and Greenwich to defend and indemnify him in the Andre Estate Action. Specifically with respect to Greenwich, Koons demanded coverage under Coverage B of the Greenwich insurance policy, titled "Umbrella Occurrence Based Liability Coverage Over Self-Insured Retention" (the "Greenwich Excess/Umbrella Policy"). Koons also alleged claims for breach of contract and bad faith against both XL Insurance and Greenwich.

After discovery, the parties submitted cross motions for summary judgment. I granted summary judgment in favor of XL Insurance[5] and Greenwich and denied summary judgment for Koons. With respect to the Greenwich policy, I concluded that there was no evidence in the record that Koons qualified as an "insured" under the terms of the policy. Specifically, I found that Koons had not pointed to anything in the record that would create a genuine dispute of material fact that, in purchasing the Truck, he was "acting within the scope of [his] duties" as a partner, joint venture member, executive officer, employee, director, or stockholder of Ches-Mont Disposal, LLC—the named insured under the policy—in order for coverage to extend to him. Because I found nothing in the record to support Koons's theory of coverage, I concluded he was not covered under the Greenwich policy, and entered summary judgment in favor of Greenwich.

Koons appealed that decision to the Third Circuit. Upon review, the Third Circuit held that "viewing the record *and reasonable inferences* therefrom in the light most favorable to Koons," there was "sufficient evidence to allow a reasonable jury to infer Koons purchased the

---

[5]Koons did not appeal the grant of summary judgment to XL Insurance.

Truck in his capacity as the owner of Ches-Mont LLC's predecessor." *Koons v. XL Insurance America, Inc.*, No. 12-3237, 2013 WL 1189262, at *4-5 (3d Cir. Mar. 25, 2013). As a result, the Third Circuit reversed the grant of summary judgment in favor of Greenwich, and remanded the case for further proceedings consistent with its ruling. Upon remand, both Greenwich and Koons have again submitted motions for summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted). To establish that there is, or is not, a genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

6

"In evaluating the motion, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation marks and citations omitted). "[A]n inference based upon a speculation or conjecture," however, "does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

In this case, both the plaintiff and the defendant have submitted motions for summary judgment. "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Accordingly, the legal standard "does not change when the issue is presented in the context of cross-motions for summary judgment." *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

## III. DISCUSSION

In his motion for summary judgment, Koons states that there is no genuine dispute as to his right to coverage under the Greenwich Excess/Umbrella Policy. Greenwich objects and claims that a jury must decide the factual issue of whether Koons purchased the Truck in his

7

individual capacity or as an owner or officer of Ches-Mont Disposal, LLC and its predecessors. Greenwich, on the other hand, claims in its motion for summary judgment that it owes no duty to defend or indemnify Koons in the Andre Estate Action even if he is found to have been acting as an owner or officer of Ches-Mont Disposal, LLC because the claims in that suit would then be barred by a worker's compensation exclusion provision in the Greenwich Excess/Umbrella Policy. Koons refutes this proposition, arguing that the exclusion provision has no bearing on Greenwich's duty to defend. Furthermore, Koons claims that Greenwich should be judially estopped from relying on the exclusion provision to deny a duty to defend or indemnify. I will address these arguments in order.

### A.  Koons's Motion for Summary Judgment[6]

In his motion for summary judgment, Koons claims that he is covered under the Greenwich Excess/Umbrella Policy, that there is no genuine dispute of material fact to the contrary, and thus he is entitled to summary judgment as a matter of law. Greenwich argues that there is a factual question as to whether Koons purchased the Truck in his capacity as the owner and president of NFA, d/b/a Ches-Mont Disposal, or in his individual capacity, d/b/a Miller Concrete, and for that reason summary judgment should be denied. I agree with Greenwich that there is a genuine dispute of material fact concerning the capacity in which Koons purchased and leased the Truck; consequently, summary judgment for Koons will be denied.

"Under Pennsylvania law . . . the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. v.*

---

[6]The parties agree that Pennsylvania law governs the insurance policy.

*Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)). "When the language of the policy is clear and unambiguous, [a court] must give effect to the language." *Id*. (internal quotation marks omitted). "[C]ourts should not 'torture the language to create' ambiguities but should read policy provisions to avoid it." *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998) (quoting *Niagra Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 220 (3d Cir. 1987)).

The Greenwich Excess/Umbrella Policy defines an insured as follows:

    1.    the Named Insured; and

    . . .

    3.    your partners, joint venture members, executive officers, employees, directors, stockholders or volunteers while acting within the scope of their duties as such.

(Def.'s Mot. Summ. J., Ex. 16, at 20.) The named insured under the Greenwich Excess/Umbrella Policy is "Chesmont Disposal Company, LLC." (*Id*., Ex. 16, at 2.) Accordingly, if Koons purchased the Truck in his capacity as an executive officer, director, etc. of Ches-Mont Disposal Company, LLC—as he claims—Koons would be entitled to coverage under the policy, as that is what the policy unambiguously states. (At least prior to consideration of the worker's compensation exclusion).

Although Greenwich argues in its opposition brief that coverage should not extend to Koons because he purchased the Truck as the president of NFA—not Ches-Mont Disposal Company, LLC—and because he has failed to overcome Pennsylvania's general rule of successor non-liability, this argument is unavailing. Under Pennsylvania law, "it is well-established that when one company sells or transfers all of its assets to another company, the purchasing or

receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Cont'l Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (internal quotation marks omitted). Nevertheless, this rule is subject to exceptions. One such exception is where "the purchasing corporation [is] merely a continuation of the selling corporation." *Id*. From the evidence in the record, a reasonable jury could find that that is the situation here.

NFA, which leased the Truck from Koons, changed its name to Ches-Mont Disposal, Inc., and then eventually went through a corporate restructuring wherein it became Ches-Mont Disposal, LLC. (Def.'s Resp., Ex. B, 43:10-44:18.) Throughout this corporate metamorphosis, the company performed the same business function, maintained the same assets, operated from the same location, and held the same president: Koons. (*Id*., Ex. B, 27:2-10, 44:8-25.) No evidence has been proffered to suggest that the progression of the company from NFA to Ches-Mont Disposal, LLC was anything other than a restructuring of a business and a continuation of a predecessor company to a successor. Thus, because a reasonable fact-finder could find that successor liability exists, Greenwich's argument fails on summary judgment.

Still, the issue of whether Koons purchased the Truck in his individual capacity d/b/a Miller Concrete or as an officer or director of Ches-Mont Disposal, LLC remains. In his motion for summary judgment, Koons argues that his purchase of the Truck was an action taken within the scope of his duties as the owner of Ches-Mont Disposal, LLC's predecessor, NFA. (Pl.'s Mot. Summ. J. ¶ 36.) Accordingly, he posits that he is an "insured" as defined by the Greenwich Excess/Umbrella Policy. (*Id*. ¶¶ 36, 40.) He further argues that the Third Circuit held that there were no facts in the record to dispute the contention that Koons was acting on behalf of his

10

company when he acquired the Truck; thus, he posits that summary judgment must be granted in his favor. (*Id.* ¶ 36.)

Koons's reliance on the Third Circuit's opinion for his argument that summary judgment should be entered in his favor is misplaced. While the Third Circuit certainly determined that the record contains "sufficient evidence to allow a reasonable jury to infer Koons purchased the Truck in his capacity as the owner of Ches-Mont LLC's predecessor," *Koons*, 2013 WL 1189263, at *5, it certainly did not hold that there is no genuine dispute of a material fact with regard to the possibility that Koons purchased the Truck in his individual capacity. Instead, it addressed the much narrower issue of whether a reasonable jury *could* find that Koons purchased the Truck as owner and founder of Ches-Mont Disposal, LLC's predecessor, and determined that, based on the record, a reasonable jury could. *See id.* at *4.

Furthermore, with respect to the Third Circuit's review of the prior summary judgment motion, the standard of review favored Koons as the nonmovant because "the record *and reasonable inferences* therefrom" were viewed in the light most favorable to Koons. *Id*. In the instant motion for summary judgment, the roles are reversed. Thus, I must now view the record and reasonable inferences therefrom in the light most favorable to Greenwich as the nonmoving party.

With that standard in mind, I conclude that a reasonable jury could also find that Koons purchased the Truck in his individual capacity. Evidence in the record shows that Koons both purchased and leased the Truck in his individual capacity, d/b/a Miller Concrete. (Def.'s Mot. Summ. J., Ex. 9-11.) Additionally, although the lease with NFA, d/b/a Ches-Mont Disposal, expired in 2004, as of 2009 the Truck was still registered to Koons, d/b/a Miller Concrete.

(Defs.' Mot. Summ. J., ECF No. 23, Ex. L.) Moreover, in 2010 Koons sold the Truck to Ches-Mont Disposal, LLC for $5,000—a payment he accepted in his individual capacity, d/b/a Miller Concrete. (*Id.*, Ex. M.) While the Third Circuit concluded this was not conclusive evidence, "[i]n determining whether the dispute is genuine, the court's function is not to weigh the evidence . . . but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Therefore, viewing the record and reasonable inferences therefrom in the light most favorable to Greenwich, I conclude there is a genuine dispute of material fact with respect to whether Koons purchased the Truck as an officer of Ches-Mont Disposal, LLC's predecessor or as an individual, d/b/a Miller Concrete, and thus, whether he is covered under the policy. Because the issue must be resolved by a finder of fact, summary judgment for Koons will be denied.

### B. Greenwich's Motion for Summary Judgment

In its motion for summary judgment, Greenwich argues that it does not owe Koons any duty to defend or indemnify him in the Andre Estate Action, even if the fact-finder finds that Koons purchased and owned the Truck as an officer of Ches-Mont Disposal, LLC and its predecessors[7], because the Greenwich Excess/Umbrella Policy issued to Ches-Mont Disposal, LLC contains a worker's compensation exclusion provision, whereby the policy does not extend to any claim covered under Pennsylvania's Worker's Compensation Act, 77 Pa. Stat. Ann. §§ 1

---

[7]If the fact-finder finds that Koons purchased and owned the Truck individually, d/b/a Miller Concrete, there is no contention that the policy provides coverage since the policy only provides coverage to officers and employees of Ches-Mont Disposal, LLC "when acting within the scope of their duties as such."

*et seq.*[8]  This issue was not reached in the prior opinions.  In his response, Koons argues that the exclusion provision does not bar coverage because he was not Andre's employer, and as such the Act is not applicable.  I agree with Greenwich that there is no genuine dispute of material fact that the worker's compensation exclusion provision contained in the policy bars coverage in the

---

[8]In his response to Greenwich's motion for summary judgment, Koons makes a brief argument that Greenwich should be judicially estopped from arguing that the worker's compensation exclusion provision in the insurance policy should bar coverage.  He states that such a claim rests on the premise that Koons was acting as Andre's employer, which is contrary to Greenwich's position in its previous summary judgment motion that Koons was acting in his individual capacity.  This argument is unavailing.

"Judicial estoppel . . . is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).  "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." *Id*. (internal quotation marks and citation omitted).  "The basic principal . . . is that absent any good explanation, a party should not be allowed to gain an advantage in litigation by one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id*. (internal quotation marks and citation omitted).

For judicial estoppel to apply, the positions taken by the party to be estopped must be irreconcilably inconsistent, the change in position must have been taken in bad faith, and no lesser sanction by the court would be appropriate. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).  Here, the positions taken by Greenwich are merely alternate theories as to why it should prevail on summary judgment.  Furthermore, there is no evidence that the positions have been taken in bad faith.  The Third Circuit has held that the doctrine should be applied "only to avoid a miscarriage of justice." *Id*.  Because Greenwich has yet to receive an advantage—let alone prevail—under either theory, I find judicial estoppel to be wholly inappropriate.

Finally, I note that in federal court, federal judicial estoppel law applies. *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) ("[W]e believe that '[a] federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.'" (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 n.2 (3d Cir. 1996))).  Koons relies on *Black v. Labor Ready, Inc.*, 995 A.2d 875 (Pa. Super. Ct. 2010), a case from the Superior Court of Pennsylvania, in arguing for judicial estoppel.  Even if that case were applicable here, Koons's argument would still fail, as the *Black* court stated that for judicial estoppel to apply the position from the previous action must have been successfully maintained. *Black*, 995 A.2d at 878.  Thus, because Greenwich's previous position was reversed on appeal, judicial estoppel would still be inappropriate.

event the fact-finder determines that Koons was acting within the scope of his duties as an officer of Ches-Mont Disposal, LLC or its predecessors when he purchased and then owned the Truck. Therefore, summary judgment in favor of Greenwich is appropriate.[9]

"An insurer's duty to defend an insured arises 'whenever the complaint filed by the injured party may potentially come within the policy's coverage.'" *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F. Supp. 2d 579, 583 (E.D. Pa. 1999) (quoting *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985)). "The duty to defend is triggered even if the complaint against the insured is groundless, false, or fraudulent." *Id*. (citing *Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 59 (Pa. Super. Ct. 1998)). "If the factual allegations of the complaint, taken as true and construed liberally, state a claim to which the policy potentially applies, the insurer must defend, unless and until it can narrow the claim to a recovery that the policy does not cover." *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959)). "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

"The burden is on the insured to establish coverage under an insurance policy." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001). "It is the insurer, however, that bears the burden of establishing the applicability of an exclusion in an insurance

---

[9]In addition, an insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings in the underlying action. The complaint claiming damages by the Andre Estate must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay the resulting judgment. *Estate of Mehlman*, 589 F.3d 105 (3d Cir. 2009). The complaint by Andre's Estate carefully does not allege that Koons is liable because of his relationship to either Ches-Mont Disposal, LLC or Ches-Mont Holdings, LLC.

contract, and exclusions are always strictly construed against the insurer and in favor of the insured." *Id*. at 206-07 (internal citation omitted). Here, Greenwich claims that it has no duty to defend Koons in the Andre Estate Action because its policy contains a worker's compensation exclusion.[10]

Pennsylvania's Worker's Compensation Act states, in pertinent part:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 Pa. Stat. Ann. § 481 (emphasis added). "Accordingly, an employee's sole recourse against his employer for injuries sustained in the course of employment is usually a claim under the [Worker's Compensation Act]." *Scribe v. Mack Trucks, Inc.*, 860 F. Supp. 216, 217 (E.D. Pa. 1994).

As I have previously noted in the course of this litigation, Koons was not Andre's

---

[10]Koons is being provided with a defense in the Andre Estate Action under another insurance policy not mentioned here.

employer; Andre's employer was Ches-Mont Disposal, LLC. *See Koons v. XL Ins. America, Inc.*, No. 11-2956, 2012 WL 1946825, at *1 n.6 (E.D. Pa. May 30, 2012), *rec'd. on other grounds*, No. 12-3237, 2013 WL 1189262 (3d Cir. Mar. 25, 2013). As president of Ches-Mont Disposal, LLC, however, Koons was a fellow employee of Andre, albeit an employee in an executive capacity. *See Goodish v. Goeringer*, 275 A.2d 58, 60 (Pa. 1971) (concluding that vice president of company qualified as a co-employee and, therefore, was immune from suit under Pennsylvania's Worker's Compensation Act for negligent conduct); *see also* 77 Pa. Stat. Ann. § 22 ("[E]very executive officer of a corporation elected or appointed . . . shall be an employee of the corporation."). Because Koons is Andre's co-employee, Koons falls within the ambit of section 72 of Pennsylvania's Worker's Compensation Act, which states,

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong doing.

77 P.S. § 72. Thus, with section 72, "[t]he Pennsylvania General Assembly . . . has 'abrogated the common-law liability of one employee to another for negligence.'" *Mahoney v. Lancaster Cnty. Motors*, No. 05-2395, 2006 WL 1284951, at *6 (E.D. Pa. May 8, 2006) (quoting *Goodish*, 275 A.2d at 60).

In this case, the parties do not dispute that Andre was employed by Ches-Mont Disposal, LLC and that he was acting in the course of his employment at the time of his death. (Def.'s Mot. Summ. J. ¶¶ 8-13; Pl.'s Resp. ¶¶ 8-13.) The parties also agree that "[a]ny lawsuit for personal injuries by the Andre Estate against Ches-Mont Disposal would be barred by the Workmens' Compensation Act." (Def.'s Br. in Supp. Mot. Summ. J., Ex. 4, ¶ 8.) Furthermore,

the complaint in the Andre Estate Action states that Koons is being sued individually for his negligent maintenance of the Truck. (Compl., Ex. 1, ¶¶ 126-155.) Therefore, because there is no dispute that a suit against Ches-Mont Disposal, LLC would be covered under the Worker's Compensation Act if Koons does qualify as an insured under the Greenwich Excess/Umbrella Policy because he was acting on behalf of Ches-Mont Disposal, LLC, then, by statute, he would not be liable for any negligent conduct of his that resulted in disability or death if such occurrence were compensable under the Worker's Compensation Act (and here the parties agree that it would be). If, on the other hand, Koons does not qualify as an insured because he was acting individually, then Greenwich has no duty to defend or indemnify him in the Andre Estate Action. In either scenario, Greenwich owes no duty to defend, and therefore no duty to indemnify, Koons. Thus, summary judgment in favor of Greenwich is appropriate.

## IV.     CONCLUSION

For the foregoing reasons, Koons's motion for summary judgment will be denied; however, Greenwich's motion for summary judgment will be granted. An appropriate order follows.